STATE OF NEBRASKA, APPELLEE, V. CINDY ROBERTS, APPELLANT.
418 N.W.2d 246

Filed January 29, 1988.    No. 87-165.

James G. Egley of Moyer, Moyer, Egley & Fullner, for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

GRANT, J.

This is an appeal from the district court for Garfield County, Nebraska. After trial to a jury, the defendant was found guilty of threatening the use of explosives, in violation of Neb. Rev.

Stat. § 28-1221 (Reissue 1985), a Class IV felony. After a hearing was held on defendant's motion for new trial, the motion for new trial was denied. Defendant was sentenced to 2 years' probation. Defendant timely appealed, and assigns as error that there was insufficient evidence to support the verdict and that the trial court erred in overruling defendant's motion for a new trial "in that a juror used information obtained outside the evidence to reach her verdict and such evidence was prejudicial to the defendant." We affirm.

The record shows the following. On March 10, 1986, at approximately 10:30 a.m., Lloyd Lamb, the administrator of Burwell Elementary School, opened an envelope addressed to the school after picking up the mail at the local post office. Inside the envelope was a note with a message in printed letters of various sizes and shapes. The letters appear to have been cut out of magazines and were attached to the paper with Scotch tape. The message read, "The bomb will go off today no one is safe Loyd [sic]." Lamb then called city hall. A police officer arrived at the school at 1:30 p.m., and the school was subsequently evacuated. A search for the bomb was conducted, but no bomb was ever found.

The defendant, a second grade teacher in the Burwell school system, was charged with threatening the use of explosives, in violation of § 28-1221, which provides in part:

> Any person who . . . maliciously conveys to any other person false information knowing the same to be false, concerning an attempt or alleged attempt being made or to be made to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building . . . by means of any explosive material or destructive device commits the offense of threatening the use of explosives.

Trial was held on December 2 and 3, 1986. Evidence adduced at trial showed that a fingerprint of defendant's forefinger was on the sticky side of one of the pieces of tape located on the front of the note. Comparison was made with defendant's fingerprints, which were on file with the Burwell Police Department because of a burglary investigation in her home in September of 1985. Other testimony showed that the defendant had expressed feelings of resentment toward Lamb after, at the direction of

the school board, he had sent her a letter criticizing her teaching skills. A witness testified that the defendant had stated that she "hated" Lamb. Other testimony showed defendant had expressed similar feelings toward a school board member.

Defendant explained the presence of her fingerprint on the Scotch tape and testified that she had a nervous habit of rolling Scotch tape around her finger while teaching. Defendant testified that the core and roll of tape from her tape dispenser had been missing from her school desk since January or February of 1986. Defendant further testified that she had not sent the note and was not guilty of the crime.

On December 3, 1986, the jury found the defendant guilty. Defendant filed a motion for a new trial. At the evidentiary hearing on the motion, an affidavit signed by a juror was offered into evidence in support of the motion by defendant, and received without objection. The affidavit, signed by the juror, stated that the juror "did in fact hear and/or see reports of the alleged bomb threats to the elementary school in Burwell, Nebr. prior to being placed on the jury"; that the juror "had also either read, or had talked to others to wit . . . a sister in-law who expressed knowledge and information concerning the bomb threat and other information about Cindy Roberts"; and that the juror "did use this information and comments from [her sister-in-law] to make her decision about Cindy Roberts being guilty." This typewritten affidavit was signed on January 13, 1987, before a notary public, Hollis Compton, a private investigator who had prepared the statement.

During the defendant's voir dire questioning before the trial, the juror was asked whether she had heard anything about the case. The juror responded as follows:

[Juror]: Just what I heard and read in the paper.

[Defense counsel]: Did you form an opinion in this case?

[Juror]: No.

[Defense counsel]: You have an open mind at this point?

[Juror]: Yes.

The juror in question testified in a hearing on defendant's motion for new trial on February 18, 1987. On direct

examination, the juror stated that an investigator had visited her at her home twice and that she had signed the affidavit on the second visit. Although the juror acknowledged that she had signed the affidavit, she testified at the hearing that what she had heard from her sister-in-law did not influence her vote in the case and that she had considered only the evidence presented at trial. The juror stated that the conversation with her sister-in-law had taken place a year before and that her sister-in-law had indicated to her that "she just thought a person was sorta out of their mind to do — pull such a stunt."

The court then questioned the juror, who stated that she had been confused by the affidavit and that she signed the affidavit because she thought "it was something that all the jurors were doing." The investigator testified that the juror had told him that she had the information obtained from her sister-in-law in her head at the time of jury deliberations. The court overruled the motion for a new trial, stating that he found the juror testified truthfully at the hearing when she said she did not use any prior knowledge in her deliberations.

With regard to defendant's first assignment of error concerning the sufficiency of the evidence, we have held that direct evidence of a crime is not essential for a conviction and that one may be convicted on the basis of circumstantial evidence if, taken as a whole, the evidence establishes guilt beyond a reasonable doubt. *State v. Eggers*, 220 Neb. 862, 374 N.W.2d 36 (1985); *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981). Circumstantial evidence is sufficient to convict a defendant where the evidence and reasonable inferences from the evidence establish the defendant's guilt beyond a reasonable doubt. *State v. Donnelson*, 225 Neb. 41, 402 N.W.2d 302 (1987). The jury could find that the defendant's fingerprint was found on the tape on the note and that the defendant had made statements concerning a possible motive. If the jury so found, that evidence was sufficient to support the jury's verdict. The trial court was correct in denying defendant's motion for new trial based on the sufficiency of the evidence.

With regard to defendant's other assignment of error, that the court erred in overruling the defendant's motion for a "new trial in that a juror used information obtained outside the

evidence to reach her verdict and such evidence was prejudicial to the defendant," we also determine that the trial court was correct. Neb. Rev. Stat. § 27-606(2) (Reissue 1985) controls inquiries into the validity of a verdict reached by a jury. Since this case does not involve jury misconduct or jury deliberations, but only the effect of the actions of one juror, the provisions of § 27-606(2) applicable to this case provide:

> Upon an inquiry into the validity of a verdict . . . a juror may not testify as to . . . the effect of anything upon his . . . mind or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes in connection therewith, except a juror may testify on the question . . . whether any outside influence was improperly brought to bear upon any juror.

The question before us, then, is to first determine whether "any outside influence was improperly brought to bear upon" the juror in question.

At the hearing on defendant's motion for new trial, the juror testified that "[t]he only discussions was when, when she [the juror's sister-in-law] told me that a year ago or thereabouts, otherwise the case was never discussed." The juror testified that the incident had been discussed "right after it happened" and that the sister-in-law "thought a person was sorta out of their mind to do — pull such a stunt." The statement was not based on any knowledge that the sister-in-law had, but was her opinion. During the voir dire examination the juror had informed counsel that she had "heard and read in the paper" about the incident. The inquiry was not further pursued. There is no contention that the juror was untruthful in her responses on voir dire examination.

Defendant called the investigator as a witness at the hearing on the motion for new trial. The investigator testified that the juror in question

> advised me at that time that she had conversation with . . . her sister-in-law, had advised her that she had known this Cindy Johnson or Cindy Roberts-Johnson and had been involved in a similar instance at an earlier date and knew that she was guilty of this. And also thought that she was somewhat crazy.

It is clear that the evidence does not suggest there was ever any contact or conversation, improper or otherwise, between the juror and her sister-in-law during the time the juror was acting as a juror. There was no evidence presented at the hearing on the motion for new trial even tending to show that an "outside influence was improperly brought to bear upon" the juror in question. As noted above, § 27-606(2) provides "a juror may not testify as to . . . the effect of anything upon his . . . mind or emotions as influencing him to assent to or dissent from the verdict . . . ." The affidavit was not admissible since it did not show, in any way, that any outside influence was brought to bear on the juror in question while serving as a juror. Other portions of the affidavit were inadmissible as attempting to show the effect of a year-old conversation on a juror's mind or emotions.

Although the juror's affidavit was not objected to at the hearing on the motion for new trial, the trial court should not have considered it, since it obviously violated the terms of § 27-606(2). Although the court did consider it, it held that the juror had not acted improperly and denied defendant's motion for new trial. We have said that a motion for new trial for alleged juror misconduct is addressed to the sound discretion of the trial court, and a ruling thereon will not be disturbed on appeal unless an abuse of discretion is shown. *State v. Robbins*, 207 Neb. 439, 299 N.W.2d 437 (1980); *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983). The trial court properly denied defendant's motion for new trial.

AFFIRMED.