LARRY M. BENZEL, APPELLEE, V. KELLER INDUSTRIES, INC., A FLORIDA CORPORATION, APPELLANT.

567 N.W.2d 552

Filed August 22, 1997.    No. S-94-1064.

James L. Zimmerman, of Sorenson & Zimmerman, and Patrick Callahan, of Purcell & Wardrope, Chtd., for appellant.

Michael J. Javoronok, of Michael J. Javoronok Law Firm, and Robert P. Chaloupka, of Van Steenberg, Chaloupka, Mullin, Holyoke, Pahlke, Smith, Snyder & Hofmeister, P.C., for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and BURKHARD and CASSEL, D. JJ.

GERRARD, J.

Appellee Larry M. Benzel was standing on an 8-foot aluminum stepladder stripping paint from a window frame when a step on the ladder failed and he lost his balance and fell, sustaining a broken leg. Benzel filed a product liability lawsuit against the ladder's manufacturer, appellant Keller Industries, Inc. (Keller). A jury, finding that the Keller ladder at issue was defective and the cause of Benzel's injury, awarded him $160,000 in damages, and judgment was entered accordingly. It is from this judgment and the denial of its motion for new trial that Keller appeals. Finding no reversible error by the trial court, we affirm.

## FACTUAL BACKGROUND

Benzel was hired by Jarome Lenzen to paint Lenzen's house. On May 3, 1990, while using a heat gun and scraper to remove old paint from around a window frame, the ladder on which Benzel was standing gave way. Benzel fell to the ground and sustained a compound fracture of both bones in his lower right leg. Lenzen testified that after Benzel fell and while they waited for the ambulance to arrive, he noticed that a corner of one step

of Benzel's ladder was lower than the rest of the step by about 2 inches.

Benzel filed suit and alleged that while he was standing on the ladder stripping paint, a rivet securing a ladder step failed, causing him to lose his balance and fall to the ground. Benzel claimed that Keller was negligent in regard to the design, manufacture, and inspection of the ladder in that it contained an improperly installed rivet that failed and allowed movement of a step on the ladder, and in its failure to warn the public of the ladder's inherent dangers. Benzel also claimed that Keller was strictly liable in tort by reason of the alleged defective design, manufacture, assembly, and preparation of the ladder.

Keller answered with a general denial of Benzel's claims and asserted that its ladders are properly designed and manufactured. Further, Keller alleged that Benzel was contributorily negligent and assumed the risk of using the ladder and that any defects in the ladder resulted because the ladder "had been abused and misused by [Benzel], in violation of warnings and instructions contained on the ladder."

Both parties filed motions in limine to preclude the introduction of certain evidence. Keller moved the trial court to, among other things, bar any witness not previously listed in Benzel's answers to interrogatories and preclude Benzel from introducing any evidence of other ladders manufactured by Keller.

In regard to Keller's request to bar witnesses not listed in Benzel's answers to interrogatories, Keller sought to exclude the testimony of Benzel's vocational rehabilitation specialist. At the hearing concerning the motions in limine, Keller claimed that it had not received notice of this expert's opinion until shortly before trial and, therefore, had not had an opportunity to depose him or to prepare rebuttal testimony in regard to his opinion.

In regard to Keller's motion to exclude testimony concerning other Keller ladders, Keller wanted to exclude three exemplar ladders on the grounds of relevancy and unfair prejudice. Two of these exemplar ladders were new, unused Keller ladders of the same model number as the subject ladder. At the hearing on the pretrial motion, Keller argued that the unused exemplar ladders did not have the same claimed defect as the subject ladder,

that being a failed rivet. Keller also argued that the exemplar ladders were different from the subject ladder because of a bracing design change. Keller claimed that showing the jury ladders with apparent defects manufactured after the subject ladder was prejudicial, since it suggested that the subject ladder was defective because these later manufactured ladders were defective.

Benzel argued at the hearing that any design changes between the ladders would not be discussed and that the jury would not be told that the exemplar ladders were manufactured after the subject ladder. Instead, Benzel, after laying the necessary foundation that the step-to-side-rail assemblies on the exemplar and subject ladders were the same, claimed that he would use the exemplar ladders only as demonstrative exhibits to supplement his expert witness' spoken description of the design and manufacturing flaw in rebuttal to Keller's claim that the alleged rivet defects on the subject ladder resulted from Benzel's abuse of the ladder. Based on Benzel's representations, the trial court overruled Keller's pretrial motion in this regard.

At trial, Benzel's engineering expert testified that his examination of the subject ladder indicated the presence of a failed rivet at the rear portion of the fifth step—the step on which Benzel was standing when he lost his balance and fell. Benzel's expert opined that this rivet failed due to an excessive torsional load applied over time and that the excessive torsional load was caused by defects in the design and manufacture of the ladder.

Through the use of photographic enlargements of portions of the subject ladder, and with the subject ladder itself, Benzel's expert demonstrated the existence of three specific assembly defects: rivets driven at angles, rivets struck off center, and margin tears. Benzel's expert explained that when someone steps on an individual ladder step, the step sags in the middle, thus placing a rotational or torsional force on the rivet securing the rear of the step to the side rail. The design of the Keller ladder relies on frictional force created by intimate contact between the step and the side rail to displace some of this torque.

Explaining further, Benzel's expert said that when rivets are driven at angles or struck off center, a gap is created which prevents the necessary intimate contact between the step and the side rail. Underwriters Laboratory standards require that gaps

between the steps and the side rails of such ladders may not exceed .005 inches. Many of the joints on the subject ladder examined by Benzel's expert exceeded this standard. Benzel's expert also testified that margin tears occurred in the subject ladder because Keller did not follow good engineering practices and place the rivet holes at least 1½ times the diameter of the hole from the edge of the step. Margin tears are cracks radiating from the rivet hole to the edge of the step and are caused by improper placement of the rivet hole. According to Benzel's expert, margin tears can cause the rivet hole to elongate and create a gap between the step and the side rail.

At this point in the trial, during a recess, Keller's counsel made a motion for mistrial, as well as asked for a continuing objection concerning any testimony regarding the unused exemplar ladders. Up to this point, Keller had not objected to Benzel's expert's brief reference to the exemplar ladders. The motion for mistrial was overruled, but Keller was granted a continuing objection.

When Benzel's expert resumed his testimony, he and Benzel's counsel had the following exchange when introducing the topic of determining whether the gaps found in the subject ladder resulted from use or misuse, or whether the gaps were manufacturing defects.

> Q. [Benzel's counsel] . . . [L]et me talk to you about the exemplar ladders. Have you looked at some other ladders as a part of your investigation here?
>
> A. [Benzel's expert] Yes, I have.
>
> Q. Now, I can represent to you that [Keller's expert] has indicated that Keller's position is that the failure here and all of the marks that we see are due to ordinary wear and tear or abuse and that this ladder was simply worn out. . . . [D]id you address that question?
>
> A. Well, yes I did.
>
> Q. And how did you do it?
>
> A. I looked at exemplar ladders, the same model of ladders that were new, to see if we see any of the same defect type indications that we had seen on the subject ladder.
>
> Q. By "new," do you mean no use or not much use?
>
> A. Never used to my knowledge.

Benzel's expert had previously testified that the method of attaching the steps to the side rails was the same in the subject ladder and exemplar ladders. Benzel's expert demonstrated on the unused exemplar ladders the appearance of excessive gaps between different steps and side rails caused by rivets driven at angles or struck off center, and margin tears. Benzel's expert offered his opinion that the defects identified on the exemplar ladders were manufacturing defects and not the result of wear and tear, since the ladders were unused.

In its case in chief, Keller's engineering expert testified that the rivet defects identified by Benzel's expert on the ladder at issue were merely cosmetic defects and that they did not cause Benzel's accident. Keller's expert specifically rejected Benzel's expert's contention that the rivets had failed because of torsional force. Instead, Keller's expert testified that the rivets had failed because of tension, that is, force pulling the rivet apart end-to-end. Keller's expert testified that considering the worst case scenario, after failure of the rivet, the step on which Benzel was standing would have deflected downward only .018 of an inch—the thickness of two 3- by 5-inch note cards. Moreover, Keller's expert opined that the broken rivets on Benzel's ladder were not the result of improper installation, but, instead, were caused by Benzel's use and misuse of the ladder.

Keller's expert agreed that Keller used the same step-to-side-rail assembly method in the subject ladder as in the exemplar ladders. Keller's design engineer also testified that the manner in which Keller riveted the ladder step to the side rail on its aluminum stepladders of all models had not changed since the inception of the product.

Following Keller's engineering expert's testimony, Benzel's counsel recalled Benzel's engineering expert as a rebuttal witness. Without objection as to scope, Benzel's expert calculated various tensional and torsional loads to rebut Keller's expert's testimony, and testified as to other ancillary matters.

## ASSIGNMENTS OF ERROR AND ISSUES ON APPEAL

Keller assigns that the trial court erred in (1) allowing Benzel's engineering expert to testify concerning two unused

exemplar ladders alleged to contain the same defective step-to-side-rail assembly as the subject ladder; (2) allowing Benzel's engineering expert to exceed the permissible scope of rebuttal testimony; and (3) denying Keller's request to exclude the testimony of Benzel's rehabilitation expert because of Benzel's untimely disclosure of the expert's opinion or, in the alternative, by failing to order a continuance.

## ANALYSIS

*Assigned Errors Nos. 2 and 3.*

Keller's latter two assigned errors, that the trial court erred in allowing Benzel's vocational rehabilitation expert to testify and that Benzel's rebuttal testimony exceeded the permissible scope, are not properly before us.

The overruling of a motion in limine is not reviewable on appeal. *Thrift Mart v. State Farm Fire & Cas. Co.*, 251 Neb. 448, 558 N.W.2d 531 (1997); *Molt v. Lindsay Mfg. Co.*, 248 Neb. 81, 532 N.W.2d 11 (1995). When a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence which was previously sought to be excluded by the motion is offered during trial. Error cannot be predicated on the admission of evidence to which no objection was made when the evidence was adduced. *Molt v. Lindsay Mfg. Co., supra.* Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *Schiffern v. Niobrara Valley Electric*, 250 Neb. 1, 547 N.W.2d 478 (1996).

Benzel's vocational rehabilitation expert testified in regard to Benzel's loss of earning capacity. Although this expert was the subject of Keller's motion in limine, Keller made no objection to this expert's testimony at trial. In addition, Keller did not object to the rebuttal testimony of Benzel's engineering expert on the grounds that it exceeded the scope of cross-examination. Even though Keller objected to portions of the engineering expert's rebuttal testimony on relevancy and foundational grounds, one may not on appeal assert a different ground for excluding evidence than was urged in the objection made to the trial court. See *Cockrell v. Garton*, 244 Neb. 359, 507 N.W.2d 38 (1993). Where the grounds specified for the objection at trial

are different from the grounds advanced on appeal, nothing has been preserved for an appellate court to review. *Ketteler v. Daniel*, 251 Neb. 287, 556 N.W.2d 623 (1996). As such, Keller waived the opportunity to claim error in this regard.

*Unused Exemplar Ladders as Demonstrative Evidence.*

That brings us to Keller's contention that its right to a fair trial was irreparably prejudiced as a result of the receipt into evidence of the unused exemplar ladders. This assignment of error is reviewed under the rule that where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 566 N.W.2d 750 (1997).

Benzel contends that the unused exemplar ladders were necessary to supplement his expert witness' spoken description of the design and manufacturing defect in rebuttal to Keller's claim that the broken rivet on Benzel's ladder was caused by misuse and abuse of the ladder.

In determining the relevance and admissibility of the demonstrative evidence at issue, our analytical framework is set primarily by the Nebraska Evidence Rules.

> All relevant evidence is admissible except as otherwise provided by the Constitution of the United States or the State of Nebraska, by Act of Congress or of the Legislature of the State of Nebraska, by these rules, or by other rules adopted by the Supreme Court of Nebraska which are not in conflict with laws governing such matters.

Neb. Rev. Stat. § 27-402 (Reissue 1995). Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or the evidence tends to establish a fact from which the existence or nonexistence of a fact in issue can be directly inferred. *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996); *Coppi v. West Am. Ins. Co.*, 247 Neb. 1, 524 N.W.2d 804 (1994). See, also, Neb. Rev. Stat. § 27-401 (Reissue 1995).

However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair preju-

28

dice, confusion of the issues, or misleading of the jury. Neb. Rev. Stat. § 27-403 (Reissue 1995); *Paro v. Farm & Ranch Fertilizer*, 243 Neb. 390, 499 N.W.2d 535 (1993); *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984).

While we have not extensively addressed the standards for admitting demonstrative evidence, several other jurisdictions have concluded that demonstrative exhibits are admissible if they supplement the witness' spoken description of the transpired event, clarify some issue in the case, and are more probative than prejudicial. See, e.g., *Cowles v. Sheeline*, 259 Mont. 1, 855 P.2d 93 (1993) (summary of other exhibits admitted in evidence; admitted only for demonstrative purposes); *Doe v. Johnston*, 476 N.W.2d 28 (Iowa 1991) (21 color slides used by medical expert to explain surgical procedure admitted to demonstrate potential for blood loss from surgery); *Hoffman v. Niagra Mach. and Tool Works Co.*, 683 F. Supp. 489 (E.D. Pa. 1988) (model of mechanical foot pedal from punch press admitted for limited purpose of demonstrating height to which press operator was required to raise foot to work pedal and activate press); *Jenkins v. Snohomish County PUD*, 105 Wash. 2d 99, 713 P.2d 79 (1986) (defendant's video of child climbing fence admitted for limited purpose of demonstrating physical deterrent aspect of fence with and without barbed wire).

Demonstrative exhibits are inadmissible when they do not illustrate or make clearer some issue in the case; that is, where they are irrelevant, or where the exhibit's character is such that its probative value is substantially outweighed by the danger of unfair prejudice. See *Cowles v. Sheeline, supra.* See, also, *Roland v. Langlois*, 945 F.2d 956 (7th Cir. 1991) (no error in trial court's refusal to admit inapplicable safety regulation); *Schuller v. Hy-Vee Food Stores, Inc.*, 328 N.W.2d 328 (Iowa 1982) (no error in trial court's refusal to admit model of merchandise display when plaintiff able to demonstrate theory of accident in alternative ways). We agree and adopt the foregoing principles for determining the admissibility of demonstrative exhibits in civil cases.

The admission of demonstrative evidence is within the discretion of the trial court, and a judgment will not be reversed on

account of the admission or rejection of such evidence unless there has been a clear abuse of discretion. See *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994).

In *Kudlacek v. Fiat S.p.A., supra*, we approved of the use of demonstrative evidence offered to rebut an opponent's claim and not meant to re-create an accident or condition. The defendant in *Kudlacek* offered into evidence edited videotapes of various performance tests conducted on a Fiat X1/9, the subject vehicle of the litigation, as well as performance tests conducted on other vehicles. The plaintiff objected, but only as to the videotapes showing the other vehicles. We concluded that the trial court did not abuse its discretion by admitting the evidence, noting that the videotapes were not meant to re-create the accident, but merely to rebut the plaintiff's contention that the Fiat X1/9 handled differently from other cars in normal maneuvers at a particular speed.

With the foregoing in mind, we now examine Keller's final assignment of error. Keller asserts that the exemplar ladders did not contain broken rivets, the defect in the subject ladder claimed to have caused Benzel's accident. Instead, Keller claims that the exemplar ladders contained only minor manufacturing defects which did not affect the structural integrity of the ladders. Further, Keller argues that it never contended that the step-to-side-rail assembly defects identified—gaps, rivets driven at an angle, rivets struck off center, and margin tears—resulted from misuse and abuse. Rather, Keller contends that just the fractured rivets on the Benzel ladder were caused by misuse and abuse. Thus, Keller claims that testimony concerning the exemplar ladders does not rebut Keller's claim of misuse and abuse, when the exemplar ladders do not contain fractured rivets.

In analyzing Keller's argument, it is apparent that Keller either misstates or misunderstands Benzel's theory of causation in this case. At trial, Benzel developed the theory that the manufacturing and design defects of rivets driven at angles, rivets struck off center, and margin tears due to improper placement of rivet holes created excessive gaps between the metal surfaces of the steps and the side rails. The design of the ladder relied on frictional forces created by intimate contact between the steps and the side rails to dissipate the torsional load applied to a rivet

when a ladder step is loaded. Thus, at the point of an excessive gap, an excessive load was applied to the rivet. Over time, this excessive load caused the rivet to fail and ultimately resulted in the ladder step, upon use, to suddenly deflect downward at the point of rivet failure.

Furthermore, the trial record does not support Keller's argument before this court—that it only claimed fractured rivets, and not excessive gaps, were caused by misuse. In its answer, Keller does not state that fractured rivets alone were caused by abuse and misuse, but, instead, that its ladder "was not defective in any manner" and that thus, any defect which may have caused Benzel's accident arose from abuse and misuse of the ladder. Keller's engineering expert testified that the subject ladder "had seen a tremendous amount of use over its life span."

Keller's expert also testified that the riveting system used by Keller "completely fills in that gap and it makes a nice tight connection" between the two sections of the ladder. Thus, the obvious inference is that the gaps between the subject ladder's step and side rail resulted from use or misuse. This inference is also consonant with Keller's expert's theory on how the rivets failed. Keller's expert testified that excessive tensional force stretched the rivets until they pulled apart end-to-end. Obviously, tensional loading on a rivet would create a gap between the metal surfaces secured by the rivet. Keller's expert stated that this excessive tensional force resulted from overloading the ladder or from a series of blows to the ladder.

Thus, the record establishes that Keller caused to be placed at issue whether the step-to-side-rail gaps, which Benzel contends caused the rivet failure, resulted from abuse or misuse, or whether these gaps were manufacturing defects. Under such circumstances, we cannot conclude that the trial court abused its discretion in receiving into evidence the unused exemplar ladders when Benzel's engineering expert utilized the unused ladders to demonstrate excessive step-to-side-rail gaps. The demonstrative exhibits supplemented the expert's spoken description of the cause of the rivet failure and aided in clarifying a crucial issue at trial. As an integral part of our determination, we reject Keller's contention that the probative value of the demonstrative exhibits is substantially outweighed by the danger of unfair prejudice.

Most, if not all, items which one party to an action offers in evidence are calculated to be prejudicial to the opposing party; therefore, it is only "unfair prejudice" with which we are concerned. In the context of § 27-403, such prejudice means a tendency to suggest a decision on an improper basis. *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984).

Keller argues that evidence of defects in unused ladders manufactured years after the accident was so prejudicial that there is a high likelihood that the jury's verdict was a result of this evidence. However, the record does not reflect that any evidence was adduced regarding the relative age or date of manufacture with respect to the unused exemplar ladders and the subject ladder. To the contrary, Benzel's expert carefully limited his testimony so as to inform the jury that the exemplar ladders were simply unused, without respect to the relative dates of manufacture. In addition, Keller contends that the exemplar ladders had a bracing system that was different from that of the subject ladder and that this created the specter of substantial prejudice. However, the fact that the bracing differed in some unspecified respects between the unused exemplar ladders and the subject ladder had virtually nothing to do with the issues in the instant case. Keller has failed to demonstrate how this bracing difference was material to an issue in controversy, let alone how it led to an error which rises to the level of unfair prejudice.

As such, when viewed in its proper and entire context, the introduction of the unused exemplar ladders into evidence was not unfairly prejudicial so as to outweigh the probative value of the demonstrative exhibits or suggest a decision on an improper basis. Thus, having determined that the demonstrative exhibits aided in clarifying certain issues in the instant case and that the exhibits were more probative than prejudicial, we conclude that the trial court did not abuse its discretion in receiving into evidence the unused exemplar ladders.

## CONCLUSION

For the foregoing reasons, we conclude that all of Keller's assigned errors lack merit, and we affirm the judgment of the district court.

AFFIRMED.