DAVID L. FORD, APPELLANT, V. THE ESTATE OF
MARK B. CLINTON, DECEASED, APPELLEE.
656 N.W.2d 606

Filed February 14, 2003.    No. S-01-1082.

Michael J. Javoronok, of Michael J. Javoronok Law Firm, for appellant.

Leland K. Kovarik, of Holtorf, Kovarik, Ellison & Mathis, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## I. NATURE OF CASE

David L. Ford, the plaintiff, was working on a broken water main when he was hit by a truck driven by the defendant's decedent, Mark B. Clinton. The primary issue in this appeal is the admissibility of accident reconstruction photographs taken by Randy Westfall, who testified for the defense as an accident reconstruction expert.

## II. BACKGROUND

### 1. FACTUAL AND PROCEDURAL

Ford, an employee of the city of Kimball, Nebraska, was struck by Clinton's truck and injured while working on a water main at approximately 4 a.m. on August 7, 1997. Ford and his coworkers were working to repair a leaking water main on Third Street in Kimball. Third Street is a three-lane street at the point of the accident: one lane for eastbound traffic, one lane for westbound traffic, and a center turn lane. Ford had parked his vehicle, a pickup truck belonging to the city of Kimball, facing west in the eastbound lane. All the lights on the vehicle were on: the headlights, hazard lights, and flashing strobe light. No other barricades or signs were placed on the street, and Ford was not wearing reflective clothing. Clinton's truck approached the scene traveling eastbound, and Clinton attempted to pass Ford's truck by driving on the side of the road to the right. Ford, who was working in the road near the front of his truck, was struck and injured by Clinton's truck. It should be noted that before Ford filed suit, Clinton was murdered, see *State v. Redmond*, 262 Neb. 411, 631 N.W.2d 501 (2001), and did not testify by deposition or at trial.

Westfall testified for the defense as an accident reconstruction expert. Westfall had received a management degree from Bellevue

University, was a certified Iowa police officer, and had over 1,000 hours of accident-related training, including training and certification as an accident reconstructionist. Westfall testified, generally, that he attempted to re-create the scene of the accident by placing a pickup truck similar to Ford's at the site of the accident. The photographs at issue were taken from a camera mounted in another pickup truck, representing Clinton's vehicle, that approached the scene and stopped at various distances for photographs to be taken. Westfall testified that an external battery was connected to the truck used to represent Clinton's vehicle, so that the truck's headlights could be left on, but the engine turned off, while photographs were taken from the truck.

Westfall testified that at the time of the reconstruction, he did not know whether Ford's truck had been equipped with a flashing strobe light or simply an amber rotating beacon, which Westfall conceded would not be as bright. The truck used for the reconstruction was equipped with an amber rotating beacon and not the brighter strobe light with which Ford's truck had been equipped. Westfall testified, however, that for the purpose of evaluating whether Ford had been visible to oncoming drivers, the presence of a beacon as opposed to a strobe light was not important. The district court, in overruling Ford's objections to Westfall's testimony, noted that the issue was not the visibility of the pickup truck, which Clinton obviously saw or he would not have driven around it, but, rather, whether Clinton should have seen Ford working by the side of the road.

Westfall also testified regarding the photographs he took of the site of the reconstruction. Westfall testified, generally, that he took a series of photographs from different positions and using different variables, that he developed the photographs in different ways, and that he then selected the photographs that, to his recollection, best represented what he had seen at the site of the reconstruction. Westfall testified that each of the photographs admitted into evidence represented what Westfall had seen at the site of the reconstruction. The district court overruled Ford's objection to the photographs and instructed the jury that the photographs were admitted for the limited purpose of demonstrating what Westfall saw on the night of his reconstruction. Ford did not object at trial to the limiting instruction.

The members of the repair crew, who were witnesses from the accident scene, testified that as part of their work, they had opened a fire hydrant east of Ford's truck. Westfall acknowledged that his reconstruction of the accident did not include an open fire hydrant and that the reconstruction did not include spraying water or wet pavement. Westfall testified that it was unnecessary for the fire hydrant to be opened during the reconstruction, because the fire hydrant was behind the truck, and that in his reconstruction, he could not see past the front of the truck. Ford did not refer specifically to the fire hydrant in objecting to Westfall's reconstruction of the accident scene.

In rebuttal, Ford presented several witnesses who had been at the scene of the accident and who testified that the photographs produced by Westfall did not represent the lighting conditions at the scene of the accident. The defense cross-examined these witnesses with respect to where they had been at the scene of the accident and whether they had observed the scene from Clinton's perspective of a motorist eastbound on Third Street. Westfall testified that he did not ask any of the witnesses if the photographs matched the perspective of the witnesses, because, as far as he was aware, none of the witnesses had approached the scene from the same direction as Clinton.

Ford presented the rebuttal testimony of Tom Feiereisen, an accident reconstruction expert, who testified at length regarding the photographs and opined that the photographs were darker than the conditions he had observed on his visits to the site of the accident. Ford also referred to a videotape made by the defense at Ford's own "visibility study" of the site of the accident, which videotape Ford's witnesses testified better represented the lighting conditions at the scene of the accident, but which Feiereisen testified did not show the clarity that was shown by the photographs. Feiereisen stated that "neither, the videotape or the photographs, show what the eye sees." Feiereisen generally testified that no photograph or videotape could accurately depict what the human eye would see at the site of the accident.

Westfall was also asked by the defense whether on the night of the accident, Clinton "[did] what was reasonable expecting a person to do given the situation he was presented with at the time." Ford objected on the basis that the question posed by the defense

"call[ed] for speculation." Westfall's response to the question was that in his opinion, "there was no reasonable expectation, this is an unexpected event, you can't have an expected response."

After trial and deliberation, the jury returned a verdict in favor of the defendant. In accordance with the jury's verdict, Ford's petition was dismissed by the district court. A motion for new trial, filed by Ford, was subsequently overruled. Ford timely appealed.

### 2. APPELLATE RECORD

We note, although it does not affect our disposition of this appeal, that there are some troubling aspects to the record presented on appeal. The transcript contains two separate file-stamped journal entries, each purporting to enter judgment in favor of the defendant and against Ford. These journal entries, and several other orders contained in the record, show significant disparities between the date reflected on the face of each order, the date on which each order was purportedly signed, and the date on which each order was eventually file stamped. In one instance, the order overruling Ford's motion for new trial reflects a delay of 9 weeks between the date of the order and the date the order was file stamped.

Official entry of a judgment, decree, or final order, however, occurs only when the clerk of the court places the file stamp and date upon the judgment, decree, or final order. See, *Macke v. Pierce*, 263 Neb. 868, 643 N.W.2d 673 (2002); Neb. Rev. Stat. § 25-1301(3) (Cum. Supp. 2002). Failure to promptly file stamp orders causes difficulties for parties and appellate courts. Inordinate delay, such as that reflected by the record in this case, creates procedural traps for unwary litigants. Although no injustice resulted here, we take this opportunity to remind the district court of its duty to ensure that court orders are timely entered in the manner provided by statute.

### III. ASSIGNMENTS OF ERROR

Ford assigns, as consolidated, that the district court abused its discretion in (1) admitting into evidence photographs that did not represent the accident scene and (2) allowing testimony as to whether Clinton was reasonable in his actions and expectations.

## IV. STANDARD OF REVIEW

The admission of demonstrative evidence is within the discretion of the trial court, and a judgment will not be reversed on account of the admission or rejection of such evidence unless there has been a clear abuse of discretion. *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997). The admission of expert testimony is ordinarily within the trial court's discretion, and its ruling will be upheld absent an abuse of discretion. *Gittins v. Scholl*, 258 Neb. 18, 601 N.W.2d 765 (1999). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Holmes v. Crossroads Joint Venture*, 262 Neb. 98, 629 N.W.2d 511 (2001).

## V. ANALYSIS

### 1. RECONSTRUCTION PHOTOGRAPHS

The first issue presented is the admissibility of the photographs made by Westfall of his reconstruction of the accident scene. Westfall testified that in his opinion, Clinton's vision was impaired by glare from the headlights of Ford's truck, and that Clinton had been unable to see Ford until just before the collision. Westfall generally based his opinion on his observations of his reconstruction of the scene of the accident and his measurements and calculations of skid marks, Clinton's speed, and the stopping distance of Clinton's truck.

The photographs at issue generally display a head-on view of the pickup truck placed by Westfall in approximately the same place as Ford's truck had been at the time of the accident. The photographs were used, essentially, to depict the reconstruction performed by Westfall and to illustrate the basis for Westfall's opinion testimony regarding the cause of the accident. Ford now complains of the photographs on several bases. Specifically, Ford argues that the photographs were misleading because (1) the reconstruction was inaccurate in that a rotating beacon was used instead of a strobe light and the fire hydrant was not opened and (2) the photographs were darker than the accident scene. Ford also contends that the photographs should not have been admitted because Ford's counsel was not invited to observe Westfall's reconstruction. We address each contention in turn.

### (a) Inaccuracies in Reconstruction

■ Demonstrative exhibits are admissible if they supplement the witness' spoken description of the transpired event, clarify some issue in the case, and are more probative than prejudicial. *Benzel, supra.* Demonstrative exhibits are inadmissible when they do not illustrate or make clearer some issue in the case; that is, where they are irrelevant or where the exhibit's character is such that its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* Ford contends that because of differences between the reconstruction and the accident scene, the photographs were inadmissible.

It should be noted, however, that Ford does not contend on appeal that Westfall should not have been permitted to testify about his reconstruction of the accident scene or his findings at that reconstruction. Ford's appellate argument is directed at the photographs. Therefore, the question is whether the photographs were an appropriate illustration of Westfall's testimony. We conclude that they were.

The photographs were offered to illustrate for the jury the reconstruction that Westfall performed and on which his conclusions were partly based. Westfall specifically testified that his conclusions were based on his observations of the reconstructed accident scene and that the photographs offered by the defense accurately represented what Westfall had seen at the reconstructed scene. The jury was instructed that the photographs were admitted for that limited purpose.

Westfall also testified that the two deficiencies now complained of by Ford were not significant with respect to the purpose of the reconstruction: to determine the visibility of Ford, and not his pickup truck, at the time of the accident. Westfall explained that a strobe light on the truck, as opposed to the amber beacon used for the reconstruction, would have made the truck more visible, but not the person standing in Ford's position relative to the truck. Westfall also stated that the open fire hydrant would not have made a difference because it was behind the truck, while Westfall was unable to see past the front of the truck at the reconstruction.

■ Evidence relating to an illustrative experiment is admissible if a competent person conducted the experiment, an apparatus

of suitable kind and condition was utilized, and the experiment was conducted fairly and honestly. *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994); *Shover v. General Motors Corp.*, 198 Neb. 470, 253 N.W.2d 299 (1977). It is not essential that conditions existing at the time of the experiment be identical with those existing at the time of the occurrence, *Shover, supra*, but they should be essentially similar, that is, similar in all those factors necessary to make the comparison a fair and accurate one. See *Rullo v. General Motors Corp.*, 208 Conn. 74, 543 A.2d 279 (1988). The lack of similarity regarding nonessential factors then goes to the weight of the evidence rather than to its admissibility. See, *Kudlacek, supra*; *Rullo, supra.*

In this case, Westfall—whose expertise is not questioned on appeal—testified that the conditions of the reconstruction were essentially similar to the accident scene and that the photographs accurately depicted his observations of the reconstruction. The district court accepted this foundational testimony and instructed the jury that the photographs were admitted for the limited purpose of illustrating what Westfall saw at the reconstruction. Compare *Kudlacek, supra* (courts have allowed videotape as illustration where judge told jury that videotape is only visual illustration and not proof). The court's determination was not untenable or unreasonable, and thus, we find no abuse of discretion.

(b) Darkness of Photographs

Ford also argues that the photographs were developed in a way that made the scene appear darker than the actual accident scene had been. Ford presented witness testimony to that effect and contends that the dissimilarity rendered the photographs inadmissible.

However, Westfall testified that the photographs accurately represented what he had seen at the reconstruction. The photographs were admitted for the purpose of illustrating what Westfall had seen at the reconstruction. Westfall's testimony, therefore, provided adequate foundation for the admission of the photographs as illustrative evidence.

Westfall also explained that the witnesses to the accident had differing views of the scene and that their perspectives on the accident scene would be different from that of the driver of an

eastbound vehicle. Thus, the testimony of the witnesses, that the photographs did not represent what they saw on the night of the accident, is not inconsistent with Westfall's testimony regarding what he saw, from Clinton's re-created perspective, at the reconstruction of the accident scene.

Given Westfall's testimony in this regard, any discrepancies between the photographs and the testimony of the accident witnesses go not to the admissibility of the photographs, but to the weight to be given Westfall's testimony. Ford had ample opportunity to cross-examine Westfall with respect to the darkness of the photographs, and the strobe light and the fire hydrant, and to list and explain the differences between the photographs and the testimony of Ford's witnesses. Compare *Hueper v. Goodrich*, 263 N.W.2d 408 (Minn. 1978). Ford also had the opportunity to present expert testimony in rebuttal to Westfall's testimony. Given Ford's opportunity to present his arguments regarding the photographs to the jury, we again find no abuse of discretion.

### (c) Notice of Reconstruction

Ford concedes that his counsel " 'doesn't have any right to be at [the defense's] re-enactment . . . unless the court deems that he has a right to be there.' " Brief for appellant at 17. Nonetheless, Ford contends that "fundamental fairness" requires a party to notify the opposing party of any reenactment. *Id.*

Ford relies on *Balian, et al. v. General Motors*, 121 N.J. Super. 118, 296 A.2d 317 (1972). In that case, the defendant prepared and filmed an experiment, without notice to the plaintiffs, just before trial and after discovery had been completed. The defendant contended that no notice of the experiment was required because the film had not been in existence at the time of the defendant's compliance with the plaintiffs' discovery requests. On appeal, the Superior Court of New Jersey stated:

> A motion picture in the eyes of the jury is one of [the] most spectacular forms of evidence. It is cumulative in nature. There are inherent dangers in its preparation and presentation. Effective rebuttal can only be had if opposing counsel and his expert are given an adequate opportunity to meet such evidence. We do not consider that cross-examination alone would ordinarily provide a sufficient

avenue of rebuttal to the adverse party. Consequently, as a prerequisite to the admission into evidence of motion pictures of a reconstructed event or a posed demonstration *taken during the pendency of an action,* fundamental fairness dictates that the party proposing to offer such evidence give notice thereof and an opportunity to his adversary to monitor the experiment and the taking of the film. (Emphasis supplied.) *Balian, et al.,* 121 N.J. Super. at 131, 296 A.2d at 324.

*Balian, et al.* is distinguishable from the case at bar. The reasoning of *Balian, et al.* was specifically predicated on the evidence being motion pictures, as opposed to still photographs. More significant, however, is the fact that the issue in *Balian, et al.* was not a general right to be present at an opposing party's reconstruction. *Balian, et al.* instead dealt with compliance with discovery requests, unfair surprise, and the ability of an opposing party to effectively respond to evidence presented at trial. Those issues are not presented in this case. While Ford was not present at Westfall's reconstruction, Ford does not argue that the defense failed to comply with court-ordered discovery regarding Westfall's proposed testimony or that Ford was unprepared to cross-examine Westfall or rebut his testimony at trial. The record, in fact, indicates the contrary.

Ford also fails to identify how, if at all, he was unfairly prejudiced by his failure to observe Westfall's reconstruction. Ford's complaint regarding the photographs is that they are not sufficiently similar to the scene of the actual accident. Ford does not identify how this would have changed if he had been present at the reconstruction. It is doubtful that opposing parties seek to be present at a reconstruction in order to assist one another in establishing the admissibility of their respective expert testimony and demonstrative evidence.

For the foregoing reasons, we reject Ford's argument that he had a legal right to be present at Westfall's reconstruction of the accident scene. We find no abuse of discretion, on this basis or the bases previously discussed, in the district court's overruling of Ford's objection to the photographs taken by Westfall at his reconstruction of the accident scene. Ford's first assignment of error is without merit.

## (d) Limiting Instruction

Ford also complains that the district court's limiting instruction was erroneous, in that the court instructed the jury that the photographs were more probative than prejudicial. Although Ford's brief argues that the court's limiting instruction was erroneous, he does not specifically assign error to the limiting instruction or contend that the limiting instruction is itself basis for reversal; rather, the argument is presented as another reason that the photographs were purportedly inadmissible.

We first note that the record does not support Ford's interpretation of the court's actions. Ford's complaint is directed at the following exchange, quoted as relevant, which occurred when the defense made its first offer of one of Westfall's photographs into evidence:

[Defense counsel]: I offer Exhibit No. [158].

[Plaintiff's counsel]: Your Honor, I'm going to object on foundation and more specifically that that doesn't represent the accident that happened in this case. Mr. Ford's vehicle was available with the right stroboscopic light on it, second of all we were not notified of this particular experiment or re-enactment going on and when it happened it is inaccurate, it would mislead the jury and the prejudice that would be shown by this photograph with the preverbal [sic] dimmer bulb than a brighter strobe out weights [sic] any probative value it has. Thank you.

THE COURT: It is the finding of the court that Exhibit No. [158] . . . .

. . . .

THE COURT: . . . is, first of all a demonstration and it is not the actually [sic] accident, no one has pictures of the actual accident. And the court does find that although there are some differences in the strobe light being whether it was strobe light and a beacon being one of them, that it is sufficiently, sufficiently alike. The depositions and the other information that was available to make it more probative th[a]n prejudicial and therefore it is admitted for the limited purposes of demonstrating what Mr. Westfall saw the night that he re-enacted it being fully — fully knowledgeable as it's been brought out here that there were some

differences that existed between the actual night of the accident and his re-enactment.

You as a jury are directed to understand the limited purpose for which it is admitted.

. . . .

[Plaintiff's counsel]: Your Honor, just so that we're clear and also in the interest of saving time I would like to have a continuing objection to all these photographs on the same basis . . . . And so we'll speed things along, [defense counsel] would you stipulate that I have a continuing objection on the same basis?

[Defense counsel]: Yes, I'll stipulate to that.

[Plaintiff's counsel]: Thank you.

The above colloquy is the extent of the relevant comments to the jury regarding the admission of the photographs. Our reading of the record is that the court made the findings necessary to support its overruling of Ford's evidentiary objection, albeit somewhat inartfully, then proceeded to instruct the jury regarding the limited purpose for which the photographs were admitted. We see no abuse of discretion in this regard. Ford made his evidentiary objection and chose to argue the objection in the presence of the jury and cannot now complain that the court's ruling on the objection was also made in the presence of the jury. Compare, e.g., *Boyd v. Lynch*, 493 So. 2d 1315 (Miss. 1986); *Aldridge v. State*, 236 Ga. 773, 225 S.E.2d 421 (1976) (appellants waived error by failing to object to conducting proceedings in presence of jury). Furthermore, the court later "reminded" the jury, after more of the photographs were offered into evidence, that the photographs were "admitted for the limited purpose as a demonstration of what Mr. Westfall saw when he re-enacted — the re-enactment he testified to and taking into account that there are differences." Any confusion present in the first limiting instruction was subsequently cured by the court's clarification of the purpose for which the photographs had been admitted.

■ Finally, we note that, as the above quotation from the record makes clear, Ford made no objection at trial based on any perceived error in the district court's limiting instruction. A litigant's failure to make a timely objection waives the right to assert prejudicial error on appeal. *Davis v. Wimes*, 263 Neb. 504,

641 N.W.2d 37 (2002). Ford did not make any objection at trial which would have afforded the court the opportunity to cure any defect in the limiting instruction; Ford therefore failed to preserve any such argument for appellate review.

### 2. Reasonableness of Clinton's Actions

Ford assigns that the district court "erred in allowing testimony as to opinion of whether [Clinton] was reasonable in his actions and expectations." Ford presents little argument in his brief in support of this assignment of error, and it is difficult to discern precisely on what basis he contends that the testimony should have been excluded. It is clear, however, that Ford's complaint relates to the following colloquy from direct examination of Westfall:

> [Defense counsel:] Do you have an opinion based upon your training and experience in safety and automobiles and all of the subjects that you testified about earlier having received training in whether or not . . . Clinton, as he drove to the right of the pickup in front of him, drove as would be reasonably be anticipated given the situation he was presented with?
>
> [Plaintiff's counsel]: Your Honor, I'm going to object on form and foundation, this calls for speculation on the part of the witness as to what . . . Clinton could be anticipated to do.
>
> THE COURT: Overruled, you may answer.
>
> [Westfall:] I hate to have you repeat that but it was so long, was that expected?
>
> [Defense counsel:] Did [Clinton] do what was reasonable expecting a person to do given the situation he was presented with at the time.
>
> [Plaintiff's counsel]: Same objection.
>
> THE COURT: Overruled.
>
> [Westfall:] In my opinion there was no reasonable expectation, this is an unexpected event, you can't have an expected response.
>
> [Defense counsel]: No further questions, Your Honor.

As the foregoing colloquy indicates, the objection made by Ford at trial was that the question posed by the defense

called for speculation on the part of the witness. The argument in Ford's appellate brief, however, is not that the testimony was speculative. One may not, on appeal, assert a different ground for excluding evidence than was urged in the objection made to the trial court. *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997). Where the grounds specified for the objection at trial are different from the grounds advanced on appeal, nothing has been preserved for an appellate court to review. *Id.* Ford has waived any valid objection that might have been made to Westfall's opinion testimony.

Furthermore, we note that to the extent we can determine the basis of Ford's appellate argument, it seems to be that the testimony given by Westfall addressed the ultimate issue to be decided in the case. However, testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Neb. Rev. Stat. § 27-704 (Reissue 1995). More significantly, we note that whatever objection might have been appropriate to the question posed by the defense, Westfall's answer to the question did not include an opinion that Clinton's actions on the night of the accident had been reasonable. Instead, Westfall simply testified, in essence, that the circumstances prior to the accident were unexpected. While the question asked by the defense may have been objectionable, Westfall did not give any prejudicial opinion testimony in response to the question. Any error by the court in allowing the question to be asked was harmless, because Westfall's answer to the question was not prejudicial to Ford.

The only other discernible appellate argument on this issue seems to be that Westfall was not a properly qualified expert witness. Ford's objection at trial does refer to "foundation." However, an objection on the basis of insufficient foundation is a general objection. *Sherard v. Bethphage Mission, Inc.*, 236 Neb. 900, 464 N.W.2d 343 (1991). If a general objection on the basis of insufficient foundation is overruled, the objecting party may not complain on appeal unless (1) the ground for exclusion was obvious without stating it or (2) the evidence was not admissible for any purpose. *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991). Neither of those criteria

is met in the instant case, and no valid foundational objection has been preserved for appellate review.

Ford's second assignment of error is unsupported by any argument identifying a valid objection that was properly made at trial and preserved for appellate review. Furthermore, Westfall, in responding to the defense's question, did not give an opinion that Clinton's behavior prior to the accident had been reasonable, and any error in permitting the question to be asked was therefore harmless. Ford's second assignment of error is without merit.

## VI. CONCLUSION

The district court did not abuse its discretion in overruling Ford's objection to the photographs from Westfall's reconstruction of the accident scene, and Ford failed to preserve any basis for concluding that the court committed prejudicial error by allowing the defense to ask for Westfall's opinion regarding the reasonableness of Clinton's actions. The judgment of the district court is therefore affirmed.

AFFIRMED.