STATE OF NEBRASKA, APPELLEE, V.
DONELL KING, APPELLANT.
693 N.W.2d 250

Filed February 18, 2005.   No. S-03-1160.

James J. Regan for appellant.

Jon Bruning, Attorney General, and Jeffrey J. Lux for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Following a jury trial, Donell King was found guilty of first degree sexual assault, kidnapping, and robbery. Thereafter, King was found to be a habitual criminal under Neb. Rev. Stat. § 29-2221 (Reissue 1995) and was sentenced to 10 to 25 years' imprisonment for first degree sexual assault, 10 to 25 years' imprisonment for kidnapping, and 10 to 25 years' imprisonment for robbery. The sentences were ordered to run consecutively.

## BACKGROUND

The State alleges that on the night of January 30, 2002, H.W. was abducted, sexually assaulted, and robbed by King. As H.W. approached a stop sign after leaving a hospital in Omaha, Nebraska, where she had attended an evening meeting, King entered H.W.'s vehicle through the front passenger door. Pursuant to King's instructions, H.W. continued to drive the vehicle until King ordered her to move to the back seat of the car so he could drive.

The State claimed that during the abduction, King demanded that H.W. give him money. King went through H.W.'s purse and took approximately $140 in cash and her checkbook, credit cards, automated teller machine (ATM) card, and driver's license. He also took her jewelry. King then drove to an ATM and used H.W.'s ATM card to withdraw money from her account. After leaving the ATM, King drove to an unknown location where he demanded that H.W. take off her clothing and then forced her to engage in oral sex and sexual intercourse.

The State further contends that after sexually assaulting H.W., King drove the vehicle to another location, where he parked the

car. King took the vehicle's keys, put them in a glove, and told H.W. to watch where he dropped the glove. He advised H.W. that when she could no longer see him, she could retrieve the keys. The evidence reveals that after retrieving her keys, H.W. returned to the hospital, where she was examined and the police were called. King was subsequently arrested and charged with first degree sexual assault, kidnapping, and robbery.

As part of his defense at trial, King admitted to taking H.W.'s money and property but denied sexually assaulting her. King claimed that on the day in question, H.W. approached him, wanting to purchase crack cocaine, and that with her permission, he got into her vehicle to complete the transaction. King claimed that after H.W. purchased the cocaine, he and H.W. smoked the drug together. King claims that afterward, H.W. wanted to purchase additional cocaine, and that with her permission, he drove her vehicle to a house, where more drugs were acquired. He then drove to an ATM, where he claims that H.W. authorized King to withdraw money for the second purchase. King claimed that he and H.W. then smoked the newly purchased cocaine and thereafter had consensual sexual intercourse in her vehicle. King admitted that after engaging in sexual intercourse with H.W., he stole the items from her purse. However, at trial, King claimed that he did not rob her because he did not take her money or jewelry by force or threats of force.

At trial, counsel for King made a general foundational objection to the testimony of Dr. Raymond Schulte and Omaha police officers Jerry Martinez and John Gasko. The State intended to have these witnesses testify regarding H.W.'s alleged use of crack cocaine on the night of her assault. Over these objections, Schulte, who was H.W.'s gynecologist and who had conducted an examination of H.W. following her sexual assault, testified that H.W. showed no signs of contact with or usage of a controlled substance when examined. Similarly, Martinez and Gasko were allowed to testify that in their opinions, H.W. was not under the influence of crack cocaine that evening. Later that day, after the witnesses had testified, King's attorney met with the prosecutors and the trial judge in chambers to discuss evidence issues which had arisen at trial. During that meeting, King's attorney renewed his general foundational objections. King's attorney also objected

to the testimony of the officers on the ground that they had not been previously identified as officers pursuant to Neb. Rev. Stat. § 29-1912 (Reissue 1995). King's attorney commented that he believed he had also objected on the basis of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), which he thought was basically the same as a foundational objection. Following his conviction, King timely appealed, and we moved this case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

On appeal, King argues that Schulte, Martinez, and Gasko were improperly allowed to testify. King maintains that these individuals testified as experts and that the trial court failed to conduct a proceeding to determine whether they were qualified to testify under *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra.* Further, King argues that the State failed to provide notice, as required under § 29-1912, that it intended to offer the expert testimony of Martinez and Gasko. It is King's position that the State had a duty to disclose results and reports which documented examinations conducted by the witnesses. King also argues that his trial counsel was ineffective as a result of counsel's failure to anticipate the expert testimony of Schulte, Martinez, and Gasko and counsel's failure to make proper objections to their testimony. Finally, King argues that there was insufficient evidence to find that he was a habitual criminal, as the evidence failed to establish that King was represented by counsel at all critical stages of his prior criminal proceedings, including sentencing.

## ASSIGNMENTS OF ERROR

King assigns, restated, that (1) the trial court erred in admitting the testimony of the officers who were not properly qualified as experts, (2) the trial court erred in finding the State had no obligation to notify King of its intent to use expert testimony on the subject of whether H.W. was under the influence of crack cocaine, (3) King had ineffective assistance of counsel stemming from counsel's failure to object to the admission of opinion testimony regarding whether H.W. was under the influence of crack cocaine, and (4) the trial court erred in finding he was a habitual criminal.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Miner*, 265 Neb. 778, 659 N.W.2d 331 (2003). The standard for reviewing the admissibility of expert testimony is abuse of discretion. *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Hartman v. Hartman*, 265 Neb. 515, 657 N.W.2d 646 (2003); *Ford v. Estate of Clinton*, 265 Neb. 285, 656 N.W.2d 606 (2003).

Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in order to show ineffective assistance of counsel such that a conviction must be overturned, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Dunster*, 262 Neb. 329, 631 N.W.2d 879 (2001).

## ANALYSIS

King assigns four errors on appeal. Each will be addressed in the order assigned.

### *DAUBERT* OBJECTION

In his first assignment of error, King argues that the trial court erred in admitting the testimony of Schulte, Martinez, and Gasko with respect to their opinions that H.W. was not under the influence of crack cocaine on the night of her assault. King maintains that the trial court failed to conduct a proceeding to determine whether these witnesses were qualified to testify as experts and that therefore, the witnesses should not have been permitted to testify regarding H.W.'s alleged drug use. During the testimony of Schulte, Martinez, and Gasko, King's trial attorney objected generally on the basis of foundation.

An expert's opinion is ordinarily admissible under Neb. Evid. R. 702, Neb. Rev. Stat. § 27-702 (Reissue 1995), if the witness (1) qualifies as an expert, (2) has an opinion that will assist the trier of fact, (3) states his or her opinion, and (4) is prepared to

disclose the basis of that opinion on cross-examination. *Robb v. Robb*, 268 Neb. 694, 687 N.W.2d 195 (2004); *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004). When the opinion involves scientific or specialized knowledge, this court held in *Schafersman v. Agland Coop*, 262 Neb. 215, 631 N.W.2d 862 (2001), that we will apply the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (*Daubert/Schafersman*). Under our recent *Daubert/Schafersman* jurisprudence, the trial court acts as a gatekeeper to ensure the evidentiary relevance and reliability of an expert's opinion. This gatekeeping function entails a preliminary assessment whether the reasoning or methodology underlying the testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Zimmerman v. Powell*, 268 Neb. 422, 684 N.W.2d 1 (2004); *Carlson v. Okerstrom*, 267 Neb. 397, 675 N.W.2d 89 (2004).

■ We recently stated in *State v. Tolliver*, 268 Neb. 920, 927-28, 689 N.W.2d 567, 575 (2004):

A trial court's evaluation of the admissibility of expert opinion testimony is essentially a four-step process. The court must first determine whether the witness is qualified to testify as an expert. It must examine whether the witness is qualified as an expert by his or her knowledge, skill, experience, training, and education. If it is necessary for the court to conduct a *Daubert* analysis, then the court must determine whether the reasoning or methodology underlying the expert testimony is scientifically valid and reliable. To aid the court in its evaluation, the judge may consider several factors, including but not limited to whether the reasoning or methodology has been tested and has general acceptance within the relevant scientific community. Once the reasoning or methodology has been found to be reliable, the court must determine whether the methodology can properly be applied to the facts in issue. In making this determination, the court may examine the evidence to determine whether the methodology was properly applied and whether the protocols were followed to ensure that the tests were performed properly. Finally, the court determines whether the expert evidence and the opinions related thereto are more probative

than prejudicial, as required under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995).

We recently discussed our standard for the admissibility of expert testimony in *Carlson v. Okerstrom*, 267 Neb. 397, 410, 675 N.W.2d 89, 103 (2004): "Under rule 702, it is not enough that a witness is qualified as an expert. The trial court must also act as a gatekeeper to ensure the evidentiary relevance and reliability of the expert's opinion." In *Schafersman v. Agland Coop*, 262 Neb. 215, 232, 631 N.W.2d 862, 876-77 (2001), we stated: "[I]n those limited situations in which a court is faced with a decision regarding the admissibility of expert opinion evidence, the trial judge must determine at the outset, pursuant to [rule] 702 whether the expert is proposing to testify to (1) scientific, technical, or other specialized knowledge that (2) will assist the trier of fact to understand or determine a fact in issue."

A trial court, however, is not required, sua sponte, to make explicit on-the-record rulings regarding the admissibility of expert testimony. *Hoult v. Hoult*, 57 F.3d 1 (1st Cir. 1995). Nor is a trial court required to always hold a hearing prior to qualifying an expert pursuant to *Daubert/Schafersman*. *U.S. v. Solorio-Tafolla*, 324 F.3d 964 (8th Cir. 2003). We conclude that in order to preserve a challenge on appeal to the admissibility of evidence on the basis of *Daubert/Schafersman*, a litigant must object on that basis and the objection should alert the trial judge and opposing counsel as to the reasons for the objections to the evidence.

In the present case, King's objections to the opinion testimony of Schulte, Martinez, and Gasko were based on "foundation" and that the State had not complied with § 29-1912(e). An objection on the basis of insufficient foundation is a general objection. *Ford v. Estate of Clinton*, 265 Neb. 285, 656 N.W.2d 606 (2003); *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002). Such an objection fails to alert the trial court, or opposing counsel, to any *Daubert/Schafersman* issue. See *U.S. v. Barker*, 27 F.3d 1287 (7th Cir. 1994). Consequently, an objection on the basis of foundation alone fails to preserve for appellate review a *Daubert/Schafersman* issue.

Because King's foundational objection was not sufficient to preserve a *Daubert/Schafersman* issue for appellate review, we

look to whether the foundational objection was properly over-ruled. If a general objection on the basis of insufficient foundation is overruled, the objecting party may not complain on appeal unless (1) the ground for exclusion was obvious without stating it or (2) the evidence was not admissible for any purpose. *State v. Davlin, supra*; *State v. Baker*, 245 Neb. 153, 511 N.W.2d 757 (1994). Neither of those criteria is met in the present case. Thus, King's first assignment of error is without merit.

### FAILURE TO NOTIFY OPPOSING COUNSEL
### OF EXPERT TESTIMONY

King next argues that pursuant to § 29-1912(e), once mutual and reciprocal discovery was ordered by the trial court, the State was obligated to disclose to King the nature of the testimony it intended to elicit from Martinez and Gasko. Section 29-1912(e) requires the State to permit the defendant to inspect and copy or photograph the results and reports of physical or mental examinations and the scientific facts or experiments made in connection with the particular case. The testimony of Martinez and Gasko was that based on their experience and training, it was their opinion that H.W. did not appear to be under the influence of drugs or alcohol at the time they interviewed her. The record is devoid of any evidence that there were records of the two officers' observations other than would be contained in the police reports. The police reports in this case, as noted by the prosecutor, had been voluntarily turned over to the defense counsel. The requirements of § 29-1912(e), therefore, had been met by the State, and King's assignment of error in this regard is without merit.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his third assignment of error, King argues that his trial counsel was ineffective as a result of counsel's failure to anticipate the expert testimony of Martinez and Gasko. King claims counsel should have properly objected to their testimony regarding H.W.'s alleged drug use, i.e., object on the basis of *Daubert/Schafersman*.

King raises his claim of ineffective assistance of counsel for the first time on direct appeal. Such a claim, however, need not be dismissed merely because it is made on direct appeal. *State v. Faust*, 265 Neb. 845, 660 N.W.2d 844 (2003). The determining factor is whether the record is sufficient to adequately review the

question. *Id.* If the matter has not been raised or ruled on at the trial level and requires an evidentiary hearing, an appellate court will not address the matter on direct appeal. *Id.*

Although we have held that certain elements of what is alleged to be ineffectiveness of counsel in this case have resulted in a waiver, the record is not sufficient for us to determine whether, absent a hearing, there was ineffectiveness of counsel.

### HABITUAL CRIMINAL ENHANCEMENT—REPRESENTATION BY COUNSEL

In his final assignment of error, King argues that the trial court erred in finding him to be a habitual criminal. King claims the two prior convictions relied on by the State did not meet the State's burden of proof for enhancement under § 29-2221 because the State failed to show that he was represented by counsel during all "critical stages" of those criminal proceedings, including conviction and sentencing. Brief for appellant at 23. We conclude that the State failed to meet its burden.

In a proceeding for an enhanced penalty, the State has the burden to show that the records of a defendant's prior felony convictions, based on pleas of guilty, affirmatively demonstrate that the defendant was represented by counsel or that the defendant, having been informed of the right to counsel, voluntarily, intelligently, and knowingly waived that right. *State v. Hall*, 268 Neb. 91, 679 N.W.2d 760 (2004). *State v. Thomas*, 262 Neb. 985, 637 N.W.2d 632 (2002), is our latest pronouncement and controls the issue of whether, under § 29-2221, the State has met its burden of showing a prior counseled conviction. See *State v. Hall, supra.* In *Thomas*, we held that it not enough for the State to show the presence of counsel at sentencing alone for purposes of § 29-2221. The State must also show the presence of counsel at the time of conviction. *State v. Thomas, supra.* Absent such proof, the evidence is insufficient to prove that the earlier convictions were counseled for the purposes of § 29-2221. *State v. Thomas, supra.*

Although in *Thomas*, we held that proof of counsel, or an intelligent and knowing waiver of counsel by the defendant, at the time of sentencing is not alone sufficient for purposes of § 29-2221, we have not previously addressed whether evidence of counsel or the waiver of counsel at the time of conviction alone will suffice. We

agree with King that for purposes of habitual criminal sentencing, the State must prove the defendant was represented by counsel at the time of conviction and sentencing, or had knowingly and voluntarily waived representation for those proceedings. See *Mempa v. Rhay*, 389 U.S. 128, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967) (stating absence of counsel during sentencing after plea of guilty, coupled with assumptions concerning defendant's criminal record which were materially untrue, deprived defendant of due process), citing *Townsend v. Burke*, 334 U.S. 736, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948). See *State v. Paul*, 256 Neb. 669, 592 N.W.2d 148 (1999) (where, citing *Mempa v. Rhay, supra*, we held that advisement to criminal which indicates he or she has no constitutional right to counsel at time of sentencing is prejudicial error).

The State claims that exhibits 60, 61, 65, and 66 prove King's 1994 conviction. Exhibit 60 is a document from the office of the state's attorney in Cook County, Illinois. Attached to it is the November 22, 1994, order of sentence and commitment. Exhibit 61 is a certified statement of conviction by the clerk of the circuit court for Cook County, which shows that on November 22, King was sentenced to 12 years' imprisonment. Exhibit 65 is an order of the circuit court for Cook County dated October 25, 1994, which shows the name of King's defense attorney. Exhibit 66 is King's trial proceedings held in the circuit court for Cook County on October 25. Exhibits 60, 61, 65, and 66, however, do not establish that King was represented by counsel or had waived the right to counsel at the time of sentencing for his 1994 conviction. We conclude, therefore, that the trial court erred in using King's 1994 conviction to enhance King's sentences.

█ In order to be sentenced as a habitual criminal, a defendant must twice have been convicted of a crime, sentenced, and committed to prison, in this state or any other state. § 29-2221. Because King's 1994 sentence could not be utilized for enhancement as a habitual criminal, the State failed to meet its burden of proving two prior convictions, sentences, and incarcerations. Therefore, King should not have been sentenced as a habitual criminal.

█ Because we have determined that King's 1994 conviction could not be used for enhancement purposes, we need not decide the issues presented with respect to King's 1993 conviction. An appellate court is not obligated to engage in an analysis which is

not needed to adjudicate the case and controversy before it. *State v. Feldhacker*, 267 Neb. 145, 672 N.W.2d 627 (2004). We do note, however, that the preferable procedure to prove enhancement is to follow the statute, Neb. Rev. Stat. § 29-2222 (Reissue 1995), and introduce authenticated copies of the former judgment and commitment.

We vacate King's sentences and remand the cause to the trial court with directions for a new enhancement hearing and for resentencing following the hearing.

## CONCLUSION

As to assignments of error Nos. 1 through 3, we determine, for the reasons set out above, that these assignments of error are without merit. With regard to assignment of error No. 4, habitual criminal, the State did not meet its burden of showing that King was counseled at all critical stages of his 1994 conviction. The trial court's finding that King was a habitual criminal, therefore, was error. We therefore vacate King's sentences and remand the cause with directions for a new enhancement hearing and for resentencing after said hearing.

AFFIRMED IN PART, AND IN PART SENTENCES VACATED
AND CAUSE REMANDED WITH DIRECTIONS.